ANDREWS, Judge
(dissenting).
I regret that I must respectfully dissent from the opinion of the majority in this case.
The first enactment of a sales tax in Florida was in 1949. The provision for exemption of industrial machinery was included in what became a part of F.S.A. § 212.-08, subsection 3, (1949), Sec. 8, Chapter 26319, Laws of Florida (1949).[2]
A sales tax by its nature is a tax upon the sale of commodities intended to be consumed, often referred to as “soft goods.” To place such a tax upon industrial machinery, generally referred to as “hard goods,” is in effect an ad valorem tax upon^ the construction in Florida of an industrial plant. Such a tax is an economic burden that deters industrial companies from constructing manufacturing facilities within the State, when the same facilities can be constructed in other states and their products sold in Florida free of the burden of such tax.
The exemption initially was set at the maximum $100 of tax with the idea that it would provide statistical information and be a means of checking on the sale of taxable items. It was never intended for the purpose of producing revenue. The legislature in 1951 amended said section to increase the maximum to $300. § 212.08(2), F.S.A. (1951). The next change was in 1957, when this section was amended to provide for $1000 limit on the tax, and added *397 the words “single transaction,” and then defined single transaction. § 212.08(4), F.S.A. (1957). The next change was in 1963, which increased the limit of the tax to $5,000. § 212.08(4), F.S.A. (1963).
The effect of these changes is to discriminate against the purchasers of small plants, and to grant exemption to purchasers of large plants, and by increasing the limit of the exemption it has gradually increased the size of the plant to be constructed to which the tax would apply.
“Single transaction” as used in the first sentence of this section of the statute means that the purchase of machinery, equipment, parts and supplies necessary to completely construct a single plant for the mining, quarrying, compounding, processing, producing or manufacturing of personal property for sale in this state or used in furnishing communication, transportation or public utility services is exempt from the sales tax on the cost thereof in excess of $33,333.34.
The use of the words “single transaction” in the second sentence is intended to enlarge, not restrict, the definition of a single transaction as used in the first sentence to include orders placed and accepted for sale, and delivery within six months from one supplier to be used at a particular location of the items upon which the exemption is allowed in the first sentence.
The respondent in an attempt to increase the revenue produced by the sales tax has construed the words “single transaction” as used in the first sentence of said statute to mean a single transaction with one supplier. Such construction is contrary to the meaning of said words in their usual and accepted connotation.
An interpretation of the contract between the parties cannot be used to determine the tax status of the project The tax is on the completed project, and it is immaterial whether the owner contracted with a single contractor for the plant or had some other arrangement that could be construed as supplier, independent contractor or agent. The statute grants a partial exemption to new plants, and a separate and distinct partial exemption of the purchase of parts and supplies necessary to maintain and operate all plants within the state, provided such items constitute a six months supply, and are procured from a single supplier.
It is true that an exemption in a taxing statute should be construed strictly as against the exemption and in favor of the collection of the tax. Gay v. Canada Dry Bottling Company of Florida, Inc., Fla.1952, 59 So.2d 788. Such a rule, however, does not apply here in that the clear, unmistakable, usual definition and construction of the words used in the statute are such as to grant the exemption as a single transaction for the completed construction of industrial plants designed for the production of goods for sale.
The language of the exemption is clear and unambiguous as enacted by the legislature in accordance with rules dictated by accepted grammatical standards of the English language. Neither the respondent nor we have authority to change the meaning of said words. Wagner v. Botts, Fla.1956, 88 So.2d 611; State ex rel. Florida Jai Alai, Inc. v. State Racing Commission, Fla.1959, 112 So.2d 825.
Accordingly, I would grant the petition for certiorari, quash the Order of the Florida Revenue Commission dated November 30, 1964 denying the request for refund of the petitioners, and direct the Commission to refund the tax paid by the petitioners in excess of $1000.00.

. SECTION 212.08 Same; specific exemptions. * * *
(3) * * * there shall be exempted from so much of the tax imposed by this chapter as shall exceed one hundred dollars on the sale, use, storage or other consumption in this state of machines or equipment used in farming, mining, quarrying, compounding, processing, producing or manufacturing of tangible personal property, or used in storing, refrigeration or preserving of tangible personal property for sale, or used in furnishing communication or transportation service, provided, that the terms “machines” and “equipment” as herein used, shall include machinery and equipment which is specifically designed and used for mining, quarrying, compounding, processing, producing or manufacturing, storing, refrigeration and preserving tangible personal property, or used in furnishing communication or transportation service, and the parts of such machines and equipment attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and equipment and which are necessary to the operation of such machines and equipment and are customarily so used. * * *