QUESTION: Do the municipal recall provisions of s. 100.361, F.S. (1974 Supp.), authorize the recall of members of the governing bodies of municipalities which have no charter or ordinance provisions respecting the recall of such members?
SUMMARY: The municipal recall provisions of s. 100.361, F.S. (1974 Supp.), authorize the recall of the members of the governing bodies of all municipalities which have at least 500 registered electors, irrespective of whether the charter or ordinances of a municipality contain provisions respecting the recall of such members. For the reasons hereinafter stated, your question is answered in the affirmative. Chapter 74-130, Laws of Florida, is now codified as s. 100.361, F.S. (1974 Supp.), subsection (1) of which reads as follows in pertinent part: (1) Any member of the governing body of a municipality which has at least 500 registered electors . . . may be removed from office by the electors of the municipality by the following procedure. . . . (Emphasis supplied.) It is clear from the foregoing that the recall procedure established by s. 100.361, supra, may be utilized to bring about the removal from office of "[a]ny member of the governing body of a municipality which has at least 500 registered voters. . . ." The determinative factor respecting the applicability of s. 100.361 to a particular municipality is not whether the charter or ordinances of the municipality contain a procedure for the recall of the members of its governing body but whether the municipality has at least 500 registered voters. If the threshold number of voters exists, s. 100.361 provides a procedure for the recall of the members of the municipality's governing body. Further confirmation of this construction of the statute is found in the title to Ch. 74-130, supra, which provides, in part, that it is an act "authorizing and providing procedures for the recall of any member of the governing body of a municipality . . . by the municipal . . . electors. . . ." (Emphasis supplied.) This title language reflects a clear legislative intent that the statute in question operate in and of itself as authorization for the removal of members of the governing bodies of municipalities, which intent is clearly implemented by the language of subsection (1) of the statute, as discussed above. In sum: The language of subsection (1) of s.100.361, F.S. (1974 Supp.), seems sufficiently clear to require application of the rule stated in Gough v. State ex rel. Sauls,55 So.2d 111 (Fla. 1951): It is a well established rule of statutory construction that the language of a statute may be so plain as to fix the legislative intent and leave no room for construction. If the statute is plain and unambiguous and admits of but one meaning, the courts in construing it will not be justified in departing from the plain and natural language employed by the Legislature. Accord: Ervin v. Capital Weekly Post,97 So.2d 464 (Fla. 1957); State v. State Racing Commission,112 So.2d 825 (Fla. 1959); Tropical Coach Line, Inc. v. Carter,121 So.2d 770 (Fla. 1960); State v. Egan, 287 So.2d 1 (Fla. 1973); Union Camp Corp. v. Seminole Forest Water Man. Dist.,302 So.2d 419 (1 D.C.A. Fla., 1974). However, your letter questions whether a different conclusion is required by reason of subsection (11) of s. 100.361, F.S. (1974 Supp.) [s. 2 of Ch. 74-130, supra], which reads, in pertinent part: "The provisions of this act shall apply to cities . . . which have adopted recall provisions." It is my view that this last-quoted language does not change the conclusions hereinabove expressed respecting the intent and effect of subsection (1) of the statute. First it should be noted that the literal wording of subsection (11) does not conflict with the language of subsection (1). And while the language of subsection (11) encompasses a smaller universe than that engulfed by subsection (1), it does not do so in a restrictive manner, but rather in what appears to be an effort at further clarification of the broad scope included within subsection (1). The language of subsection (11) would become restrictive only if the word "only" — or a word of similar restrictive import — were to be inserted between "shall" and "apply," but, as noted in In re Estate of Jeffcott, 186 So.2d 80 (2 D.C.A. Fla., 1966), ". . . a court will refuse to tack additional words on a statute in a situation where uncertainty prevails as to the legislature's intent," and a court may not "invoke a limitation or . . . add words to the statute not placed there by the Legislature." Chaffee v. Miami Transfer Company, Inc., 288 So.2d 209 (Fla. 1974). Further, as noted by the Supreme Court of Florida in State v. Egan, 287 So.2d 1 (Fla. 1973), rules of statutory construction ". . . are useful only in case of doubt and should never be used to create doubt, only to remove it."