QUESTION: Does s. 9(7) of Ch. 75-257, Laws of Florida (the Local Government Comprehensive Planning Act of 1975, s. 163.3184(7), F.S.), requiring at least a majority of the total membership of the governing body for enactment of a comprehensive plan or element thereof, conflict with and take precedence over s. 6.09 of Broward County Charter, which provides that the land use plan adopted pursuant to its provisions shall be enacted unless there is a unanimous vote of the county commission to reject the plan?
SUMMARY: A land use plan for Broward County recommended by the Broward County Planning Council created by the Broward County Charter for that purpose should comply with and be adopted in accordance with the procedures prescribed by Ch. 75-257, Laws of Florida (the Local Government Comprehensive Planning Act of 1975), including the provision that it may be adopted by not less than a majority of the members of the Broward County Commission as provided by s. 9(7) of the 1975 act. The Local Government Comprehensive Planning Act of 1975 (the 1975 act, hereafter) was intended to provide a uniform method for local governments to use in establishing and implementing comprehensive planning programs to guide and control future development in this state, including not only the area of land use planning, but also of traffic control, sewage, drainage, water supply, conservation and development of natural resources, recreation, and housing. It requires cities and counties and other local governmental entities as defined therein to develop a comprehensive growth plan in the areas referred to above not later than July 1, 1979, and to designate a "local planning agency" not later than July 1, 1976, to prepare and recommend to the governing body of the city or county or other entity a comprehensive plan after due notice and public hearings. Section 9 (s. 163.3184, F.S.) requires the governing body to submit the proposed plan to the state and regional planning agencies and, if a municipal plan, to the county planning agency for review. Under subsection 9(6), the governing body "shall consider all comments received from any person, agency, or government. It may adopt, or adopt with changes or amendments, the proposed comprehensive plan, or element or portion thereof, despite any adverse comment received." And subsection 9(7), id., provides that By not less than a majority of the total membership of the governing body, the governing body may in a manner prescribed by law adopt the proposed comprehensive plan, or element or portion thereof, or adopt it with changes or amendments. . . . There can be no doubt that the 1975 act was intended to apply to chartered as well as nonchartered counties. See s. 5(2), Ch. 75-257, supra (s. 163.3171(2), F.S.), providing that in chartered counties the county "may exercise such additional authority over municipalities or districts within its boundaries as is provided for in its charter"; and s. 6(1), id. (s. 163.3174(1), F.S.), authorizing local governing bodies, individually or in combination, to designate a "local planning agency," provides that "in the case of chartered counties, the planning responsibility between the county and the several municipalities therein shall be as stipulated in the charter." Against this background, you have requested my opinion as to whether the provisions of the Broward County Charter respecting approval by the county commission of the proposed land use plan submitted to it by the Broward County Planning Council, created therein for this purpose, are superseded by the provisions of the 1975 act providing for the approval by the governing body of the county of a comprehensive growth plan prepared by the county's "local planning agency." The Broward County Charter provides that the land use plan as submitted by the Planning Council in writing and any amendments thereto "shall be enacted into law [by the county commission] unless there is a unanimous vote of the Commission to reject." The planning council has apparently completed a proposed land use plan for Broward County and the municipalities therein, as required by Art. VI of the Broward County Charter; but this is only one of the planning areas (or "elements" as they are referred to in the 1975 act) that are mandatorily required to be included in the county's comprehensive growth plan, as noted above. Broward County's governing body must still comply with the requirements of the 1975 act by designating a "local planning agency" on or before July 1, 1976, for the preparation of a comprehensive plan covering all elements of development in the county as required by the 1975 act, including land use planning, and by submitting the plan, or any element thereof, to the state and regional planning agencies for review. And, as noted above, following review of the plan or any element thereof by these agencies, the governing body of the county "may adopt, or adopt with changes or amendments, the proposed comprehensive plan, or element or portion thereof, despite any adverse comment received." Section 9(6), Ch. 75-257, supra. It is noteworthy, also, that s. 6(5) of Ch. 75-257 (s. 163.3174(5), F.S.) provides that the "responsibilities, powers, and duties of the local planning agency shall be set out in the ordinance establishing the agency, subject to the particular requirements of this act." As noted in AGO 071-109, "unless express constitutional authority therefor can be found, a county charter may not be inconsistent with a legislative program or plan provided by general law for the particular governmental or public function or service in question." There are no constitutional provisions which either expressly or by necessary implication create or authorize the creation of land planning agencies. Thus, unless there is something in the 1975 act itself which expressly preserves in full force and effect existing provisions of county charters or special acts relating to growth and development planning in a county, it must be concluded that the general law takes precedence over the provisions of the Broward County Charter in this respect. Only two provisions of the 1975 act have been found which might possibly be construed to have been intended to preserve existing special laws or county charters relating to growth planning. (It is assumed for the purpose of argument that county charters adopted under general law authority, ss. 125.60-125.64, F.S., should be given the same effect as special laws in this context.) Section 9(7) of the 1975 act, quoted above, authorizes a majority of the members of the governing body of the local governmental entity to adopt a comprehensive plan, or any element thereof, "in a manner prescribed by law. . . ." And s. 17 of Ch. 75-257 (s. 163.3211, F.S.) provides that Where this act may be in conflict with any other provision or provisions of law relating to local governments having authority to regulate the development of land, the provisions of this act shall govern unless the provisions of this act are met or exceeded by other provision or provisions of law relating to local government. . . . (Emphasis supplied.) As to s. 9(7): "Manner" is defined by Black's Law Dictionary, 4th Ed., as "a way, mode, method of doing anything, or mode of proceeding in any case or situation." The manner prescribed by law, Art. VIII, s. 1, State Const., as implemented by s. 166.041, F.S., for the exercise by a county of its home rule powers is an ordinance. Accord: Section 166.041 as to municipal action of "a general and permanent nature and enforceable as a local law." (Cf. Art. VIII, s. 4, State Const., providing for the transfer of powers between cities, counties and special districts "by law or by resolution of the governing bodies" which are parties to the transfer.) However, a special district or other local governmental entity having planning power might under the act creating it exercise its powers by resolution. It is well settled that all parts of a statute must be construed together so as to give full force and effect to each of them, if possible. State v. State Racing Commission,112 So.2d 825 (Fla. 1961). The 1975 act itself has prescribed in detail the uniform procedure to be followed by local governing bodies in adopting comprehensive growth plans, see ss. 8 and 9 of the 1975 act (ss. 163.3181 and 163.3184, F.S.), as well as the vote required to adopt the comprehensive plan recommended by the local planning agency — not less than a majority of the members of the governing body. While it preserves existing growth plans adopted prior to the effective date of the 1975 act, they may continue in effect only "until appropriate action is taken to adopt a new comprehensive plan as required by this act." Section 13, Ch. 75-257 (s. 163.3197, F.S.). It must be concluded, therefore, that the Legislature intended the "manner prescribed by law" by which a local governmental entity may exercise its powers under the act to refer to the "mode of proceeding" — by ordinance, in the case of a county — and not to the substantive and procedural requirements spelled out in the 1975 act itself. (No question is presented and no opinion is expressed as to whether any "land development regulations" [defined in s. 12(2)(b) of the act (s.163.3194(2)(b), F.S.) to include local government zoning and similar regulations controlling land development] may be adopted by a city or county or other local governmental entity in accordance with other applicable procedures pending the adoption of its comprehensive growth plan or element thereof. Cf. ss. 12(2)(a) and 12(1), id., specifically prescribing the procedure to be followed in adopting such local land development regulations after a comprehensive growth plan or element thereof has been adopted by the local governing body, and requiring such regulations to be "consistent with the adopted comprehensive plan, or element or portion thereof.") Nor does s. 17 of the 1975 act, quoted above, require a different conclusion. This provision confirms the legislative intent that the provisions of the 1975 act shall control over conflicting provisions of law "unless the provisions of this act are met or exceeded by other provision or provisions of law relating to local government. . . ." (Emphasis supplied.) This appears to mean that local laws relating to growth planning and development in a particular locality may provide additional requirements that must be included in a comprehensive plan to be adopted by a particular local governmental entity. See subsections (1)-(6) of s. 7 of the 1975 act (s.163.3177, F.S.), listing the elements that must be included in the comprehensive plan, and subsection (7) of s. 7 listing the additional elements that may be included in the comprehensive plan. Additional notifications, additional hearings, and similar additional requirements that "exceed" those prescribed by the 1975 act could also be carried out under a local law so providing. However, the provision of a special act (or, perhaps, county charter, as is the case here) that would be contrary to the overall scheme or plan of the 1975 act, vesting in the governing body of the county the ultimate responsibility for adopting the comprehensive plan by not less than a majority of the members of that body, does not appear to be within the purview of s. 17, supra. And, pending legislative or judicial clarification, you are so advised.