Mr. Robert A. Ginsburg Miami-Dade County Attorney 111 Northwest 1 Street Suite 2810 Miami, Florida 33128-1993
Dear Mr. Ginsburg:
You ask substantially the following question:
Does section 338.155(6), Florida Statutes, exempt from disclosure the personal identifying information provided to the county on an application and agreement for a pre-paid toll collection transponder when such service is paid for by credit card, charge card, or check?
In sum:
Section 338.155(6), Florida Statutes, exempts from disclosure the personal identifying information provided to the county on an application and agreement for a pre-paid toll collection transponder when such service is paid for by credit card, charge card, or check.
You state that Miami-Dade County has electronic toll facilities. The county distributes transponders that allow travelers to prepay toll collections and avoid stopping for tolls. To acquire a transponder, a person must complete an application and agreement containing personal identifying information. Payment for this service may be made by cash, credit card, charge card, or check.
Section 338.155(6), Florida Statutes, provides:
"Personal identifying information provided to, acquired by, or in the possession of the Department of Transportation, a county, or an expressway authority for the purpose of using a credit card, charge card, or check for the prepayment of electronic toll facilities charges to the department, a county, or an expressway authority is exempt from s. 119.07 and s. 24(a), Art. I of the State Constitution. The exemption is subject to the Open Government Sunset Review Act of 1995 in accordance with s. 119.15. The exemption in this section shall stand repealed effective October 2, 2001, unless otherwise reviewed and reenacted by the Legislature."
Since you state that the application and agreement are required for the transponder regardless of the method of payment, you question whether section 338.155(6), Florida Statutes, exempts the personal identifying information contained in the application and agreement from disclosure.
The provisions of section 338.155(6), Florida Statutes, were first adopted in 1996.[1] As required by Article I, section 24(c), Florida Constitution, and in accordance with section 119.15, Florida Statutes,[2] the Legislature set forth the public necessity justifying the exemption relating to the prepayment of electronic toll facilities. Section 2 of Chapter 96-178, Laws of Florida, provides:
The Legislature finds that it is a public necessity to exempt personal identifying information about individuals which is provided to, acquired by, or in possession of the Department or Transportation, a county, or an expressway authority for the purpose of prepaying for toll facilities charges by charge card, credit card, or check. The exemption puts individuals who pay tolls with a check, charge card, or credit card on an equal footing with individuals who pay cash at the toll booth. The exemption protects the health and safety of the public by keeping confidential information as to the whereabouts of individuals as they use the toll collections system. The exemption promotes the use of the electronic toll collection system, which is a more efficient and effective government collection system for tolls, because prepaying for tolls by check, charge card, or credit card not only saves individuals time in passing through the toll facilities, in comparison with individuals who pay cash, but also costs much less to administer. Further, the exemption protects the privacy of individuals and promotes the right to be let alone from unreasonable government intrusion by prohibiting the public disclosure of private information about the finances and location of the individuals using the toll collection system.
The parameters of the exemption afforded by section 338.155(6), Florida Statutes, have not been judicially determined by the appellate courts of this state. The legislative history regarding the adoption of a statute, however, may be used to clarify ambiguity within a statute and to discern legislative intent.[3]
In construing a statute, a court will consider its history, the evil to be corrected, the purpose of the enactment, and the state of the law already in existence.[4]
An examination of the legislative history surrounding the enactment of the exemption indicates that the Legislature was aware that applications were required for the transponders used in the automated electronic toll collection systems. As the staff analysis for Committee Substitute for Senate Bill 426 noted, the Orlando-Orange County Expressway Authority began using transponders in fiscal year 1994-1995 to facilitate passage through the Orange County toll facilities:
"The transponder, popularly referred to as the E-Pass, allows drivers to establish a prepaid toll account, either with a check or credit card. As the driver passes through the designated toll gate, the transponder makes electronic contact with a receiver in the toll lane. Immediately, the amount of the toll is subtracted from the prepaid E-Pass account. . . . The E-Pass application includes the driver's name, address, home and work telephone numbers, driver's license number, credit card account number, and vehicle identification information."[5]
The staff analysis notes that the bill would protect information obtained by or in the possession of the expressway authority that "could reveal the extent of use by, the identity of, or other personal information regarding an individual who has provided the authority with the information in connection with the use of the credit card or check."[6] While the bill originally applied only to the Orlando-Orange County Expressway Authority and its E-Pass system, the bill was subsequently amended to apply to information held by the Department of Transportation (DOT), counties and other expressway authorities related to automated toll collection systems.[7] The Senate subsequently adopted an amendment conforming the bill to Committee Substitute for House Bill 689, a companion bill in the House of Representatives.[8]
The staff analysis for Committee Substitute for House Bill 689 also discussed the E-Pass System that allowed a motorist to apply for an E-Pass account funded by either check payments or direct debits to a major credit or charge card.[9] The analysis states that the bill "[a]mends s. 338.155, F.S., to provide a public records exemption for personal identifying information provided to, acquired by, or in the possession of DOT, a county, or an expressway authority in connection with a person using a credit card, charge card, or check to pay toll facility charges."
A review of recordings of the committee meetings in which these bills were considered indicates that the bill was intended to exempt personal identifying information that individuals were required to provide to the public agency in order to obtain a transponder and use the automated toll collection systems. Since E-Pass accounts made under the Orlando-Orange County Expressway Authority system were funded by charge or credit cards or checks, the legislation refers to those sources of payment. As the sponsor of the House Bill 689 stated before one committee:
"To set up an account, customers have to provide the expressway authority with some very personal information including addresses and credit card numbers. As customers use the E-Pass system, the expressway authority gathers other personal information such as the exact time and location the customer passes through the toll booth. The bill provides an exemption from the public records laws for this personal information. The exemption applies to information that identifies the customers or their account numbers and the information that allows the customers' whereabouts to be tracked."[10]
In light of the above, I am of the opinion that section338.155(6), Florida Statutes, exempts the personal identifying information provided to the county on an application and agreement for a transponder that enables travelers to prepay toll collections and avoid stopping for tolls when such service is paid for by credit card, charge card, or check.[11]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 1, Ch. 96-178, Laws of Florida. In the same bill, the Legislature also amended section 119.07(3), Florida Statutes, to provide for the confidentiality of bank account numbers or debit, charge or credit card numbers given to an agency for the payment of any fee or debt. See, s. 3, Ch. 96-178, Laws of Florida, creating s. 119.07(3)(z), Fla. Stat.
[2] See, Art. I, s. 24(c), Fla. Stat., stating in part that the Legislature may provide by general law for the exemption of records provided that such law states with specificity the public necessity justifying the exemption and is no broader than necessary to accomplish the stated purpose; and s. 119.15, Fla. Stat., providing that an exemption may be created or maintained only if it serves an identifiable public purpose and is no broader than is necessary to meet the public purpose it serves.
[3] And see, Amos v. Moseley, 74 Fla. 555, 77 So. 619 (Fla. 1917); Byte International Corporation v. Maurice Gusman ResiduaryTrust Number 1, 629 So.2d 191, 192 (Fla. 3d DCA 1993). And see,State v. Webb, 398 So.2d 820, 824 (Fla. 1981); State ex rel.Florida Jai Alai, Inc. v. State Racing Commission, 112 So.2d 825,828 (Fla. 1959) (legislative intent is the polestar by which the court must be guided).
[4] See, e.g., State v. Webb, 398 So.2d at 824; DeBolt v.Department of Health and Rehabilitative Services, 427 So.2d 221
(Fla. 1st DCA 1983).
[5] Senate Staff Analysis and Economic Impact Statement, CS/SB 426, dated March 12, 1996. Cf., Ellsworth v. Insurance Company ofNorth America, 508 So.2d 395, 401 n. 3 (Fla. 1st DCA 1987) (staff analysis of legislation should be accorded significant respect in determining legislative intent); State, Department ofEnvironmental Regulation v. SCM Glidco Organics Corporation,606 So.2d 722, 725-726 (Fla. 1st DCA 1992).
[6] Id.
[7] Senate Journal, p. 207, March 14, 1996.
[8] Senate Journal, pp. 380 and 394, April 17, 1996.
[9] House of Representatives as further revised by the Committee on Transportation Final Bill Analysis and Economic Impact Statement, CS/HB 689 (Passed as CS/SB 426), May 29, 1996.
[10] Representative Trovillion, House of Representatives, Committee on Transportation, CS/HB 689, March 14, 1996, Tape 1 of 2, Series 414, Box 1108. And see, Senate Committee on Government Reform and Oversight, CS/SB 426, March 13, 1996, Tapes 2 and 3 of 3, Series 625, Box 725, in which the committee discusses the need for such information as the name, address, times and places when transponder was being used, to be exempt from disclosure.
[11] This office has been advised that the Department of Transportation, which is authorized by section 338.155(6), Florida Statutes, to establish such a program, considers such information contained in its application and agreement for a transponder to be confidential.