**In the Matter of JESUS LOVES YOU, INC., Debtor.**

**Bankruptcy No. 84–051.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 20, 1984.

Gary Betz, Miami, Fla., for State of Fla.

Domenic Massari, Tampa, Fla., for debtor.

William Holland, Tampa, Fla., James Buzbee, Plant City, Fla., for Creditor.

## ORDER ON MOTIONS FILED BY STATE OF FLORIDA

ALEXANDER L. PASKAY, Chief Judge.

IT IS rare, indeed, that an ordinary and generally mundane commercial litigation, the usual hallmark of a bankruptcy case turns into the morality play with a cast of corporate entities masquerading as messengers for deities and the sovereign State of Florida is the prime antagonist. This is precisely the nature of the proceeding pending before this Court in which Jesus Loves You, Inc., the Debtor who seeks relief under Chapter 11, is accused by the State of Florida with all kinds of nefarious conduct, including an alleged fraudulent transfer of properties to Christ is the Answer, Inc. In order to put the matter in an understandable posture, a brief recitation of the relevant portions of the State Court proceeding and the events surrounding the same should be helpful.

In 1981, the State of Florida through its Attorney General filed a suit in the Circuit Court in and for Hillsborough County naming Jesus Loves You, Inc. (Debtor), a Florida non-profit corporation and Gene Jandreau and Judith Jandreau as defendants. The amended complaint which was filed on November 17, 1982, after recitation of numerous facts, sets forth a claim for relief in three separate counts. In Count I, the State of Florida sought a revocation of the corporate charter of the corporate Defendant on the ground that the corporation is defunct, and that pursuant to § 617.05(2) Fla.Stat. (1982), the Court has jurisdiction to revoke its charter and declare a dissolution of the corporation. In Count II, the State of Florida sought injunctive relief prohibiting the corporate Defendant and the individual Defendants to alienate any of the corporate properties including certain buildings, fixtures and other improvements. In Count III, the State of Florida sought, pursuant to Chapter 617.09 and 812.035 Fla.Stat. (1982), a dissolution of the corporation, a forfeiture of its charter and an accounting by the Defendants of all the assets of the corporation and a return of all properties or monies received from the sale of the property of the corporation by the Defendants. In Count III, the State of Florida also sought an injunction in order to prevent alienation of any corporate properties and rescission of any fraudulent conveyance of corporate properties by any of the Defendants or their agents.

Prior to the commencement of the case filed by the State of Florida, Robert Thomas a member of Jesus Loves You, Inc. and David Welch a member and director of Jesus Loves You, Inc. filed an action on behalf of the members of the Debtor and sought to enjoin Gene Jandreau, the president of the Debtor, from selling the land and the buildings of the corporation and to prohibit use of any of the properties by the Debtor, in a manner inconsistent with the charitable purpose for which the Debtor was organized, to wit: to operate a boys home located in Hillsborough County, Florida. Thomas and Welch also sought an order preventing Gene Jandreau from using the proceeds of any sale of the property for his own individual use.

The two cases, consolidated for trial, were originally set for trial in August 1983, but after various continuances finally reached the trial calendar in December, 1983. After a trial, which lasted a week, and after hearing the testimony of Gene Jandreau, the Circuit Court found that the corporation had been defunct since 1981; and had operated illegally since 1979 because it did not have the required number of directors. The Court further made some specific findings, but before it was able to reduce the findings to writing and to enter

a final judgment in accordance with the findings, Jesus Loves You, Inc. filed its Petition for Relief in this Court by seeking relief under Chapter 11 of the Bankruptcy Code. Upon filing a suggestion of the pendency of bankruptcy, the Circuit Court stayed all further proceedings in the two suits.

On January 31, 1984, the State of Florida filed in this court, papers entitled "Petition and Motion to Dismiss." In the Petition and Motion, the State seeks a dismissal of the Chapter 11 case on the ground that the Debtor failed to file the appropriate schedule of assets and financial statements. In the alternative, the State seeks in lieu of dismissal, an appointment of an independent trustee or an "attorney" to determine whether or not Jesus Loves You, Inc. is a debtor-in-possession and to consider whether any reorganization is, in fact, a valid reorganization attempt.

On February 16, 1984 the State of Florida filed an amended Motion to Dismiss which basically sets forth various and sundry alleged illegal activities by Gene Jandreau, the president of Jesus Loves You, Inc. who also appears to be the president and sole person in control of the affairs of Christ is the Answer, Inc. The Amended Motion also intimates that the purpose of the dismissal would be to permit the Circuit Court to appoint a receiver to take control of the properties of the Debtor in order to assure that the creditors of the Debtor are protected. Further, it is alleged by the State of Florida that the filing of the petition in this Court was the action of an individual, not a corporation; and that the petition was filed in order to prevent the Circuit Court to proceed and make a proper disposition of the then pending litigations.

On February 29, the Barnett Bank of Tampa, also known as the Great American Bank of Tampa formerly known as First American Seminole Bank of Tampa filed a Motion and sought the appointment of a trustee. On February 23, the State of Florida also filed a paper entitled "Petition and Motion to Lift or Clarify Any Automatic Stay of State Court Proceedings." In this Motion, the State of Florida seeks an advisory opinion from this Court concerning the applicability of the automatic stay imposed by § 362(a) or particularly, a statement from this Court that by virtue of § 362(b)(4) and (5), the automatic stay is not applicable to the state court proceedings and that the Attorney General should be permitted to proceed and complete the now pending legal actions against the Debtor and against the two individuals who are also debtors having filed their own Petition for Relief. Thomas and Welch joined in the same request.

On April 5, 1984, the Debtor filed an Objection to the Standing of the State of Florida; a Motion to Dismiss; and a Motion to Strike all Pleadings filed by the State of Florida. An identical motion was filed by William M. Holland, Jr. who was counsel of record for the Debtor in the state court proceeding. Both motions seek an order dismissing or striking all pleadings filed by the State of Florida on the grounds that (1) the State of Florida has no standing to appear in this court, and (2) justice should not permit the Attorney General of the State of Florida to participate in these proceedings because he allegedly acts as a guise for Robert Thomas, an individual who is paying the special assistant Attorney General's expenses and attorney fees.

All pending Motions were duly scheduled for hearing at which time this Court heard argument of counsel for the respective parties, considered all submissions including the portions of the state court record from which the following facts relevant and germane to the matters under consideration are as follows:

While the state court litigation was pending in the Circuit Court, Gene Jandreau, acting as president of the Debtor, transferred by deed all the land and buildings owned by the Debtor to an entity known as "Christ is the Answer, Inc." It further appears that at the time of the transfer, Gene Jandreau was also acting as president of Christ is the Answer, Inc. In July, 1981, Gene Jandreau transferred the same property by deed on behalf of Christ is the

Answer, Inc. to Roland Marito, Jr. Notices of Lis Pendens were filed giving notice to all persons of the pending litigations filed by Robert Thomas and David Welch, both members of the Debtor. The Lis Pendens was filed prior to any transfer by Gene Jandreau to Christ is the Answer, Inc. and by Christ is the Answer, Inc. to Roland Marito.

It further appears that numerous items of personal properties of the Debtor were sold by Gene Jandreau as scrap or moved to Tennessee; that substantial sums of money belonging to the Debtor were secreted and have been secreted by Gene Jandreau; that there was no consideration for the transfer from the Debtor to Christ is the Answer, Inc. or for the transfer from Christ is the Answer, Inc. to Marito.

It is now contended that Marito executed a note and a mortgage in favor of an attorney, who is supposed to be acting as trustee for the benefit of creditors of the Debtor and possibly for Christ is the Answer, Inc. or even in favor of the Debtor, although this is not clear. There is evidence in the state court record that the transfer to Marito was a sham because Gene Jandreau continued to seek purchasers for the property even after the transfer to Marito.

Based on the following, it is the contention of the State of Florida that this Debtor is not a viable entity capable of reorganization since it owns no properties; that the case should either be dismissed or that the State of Florida should be permitted to complete its pending suit to proceed to obtain a judgment revoking the charter of the Debtor; and that the State should be permitted to obtain the appointment of a receiver for the "properties of the Debtor;" to pursue the transfers and to restore the properties to the Debtor in order to assure that the properties of the Debtor are used for the proper corporate purpose. If it is determined that the Debtor is no longer able to function as a charitable corporation for the purpose for which it was created, the State seeks a distribution of the proper-

ties of the Debtor in conformity with the applicable corporate laws of the State.

As noted, the standing of the State of Florida to participate in these proceedings is challenged by the Debtor and Mr. Holland, who having been the counsel of record for the Debtor in the state court litigation, asserts a claim based on his services in the approximate amount of $189,000.

In order to meaningfully consider the matters under consideration, it is necessary first to consider the nature of the litigations in the Circuit Court, particularly the legal character of the charter of this corporation which the State seeks to revoke.

First, it is well established that the corporate charter is a contract and is entitled to protection under the constitution of the United States, thus prohibiting the states from passing any law impairing the obligation of the contract, *Trustees of Dartmouth College v. Woodward,* 17 U.S. 518, 4 L.Ed. 629 (1819). This principle is recognized by the Supreme Court of this State. *Johnson v. Pensacola & G.R. Co.,* 9 Fla. 299 (1860); *Atlantic & G.R. Co. v. Allen,* 15 Fla. 637 (1876); *Marion Mortgage Co. v. State,* 107 Fla. 472, 145 So. 222 (1932). However, this doctrine is limited by an equally well settled principle that the legislature cannot bargain away the police power of the sovereign or its power to take appropriate measures in order to protect the safety, health and morals of its citizens. *State ex rel. Davis v. Knight,* 98 Fla. 891, 124 So. 461 (1929); *Citizens' Bank & Trust Co. v. Mabry,* 102 Fla. 1084, 136 So. 714 (1931); *Marion Mortgage Co. v. State, supra.* From all this follows that the State of Florida is not prevented to take appropriate measures to assure that the corporate charter granted by the State is not misused or that the corporation is not used for purposes which are either illegal or expressly prohibited by charter. Neither is the State powerless to revoke the charter pursuant to the applicable provisions of the Fla.Stat. 617.09 in the event that the requirements of the Statute for revocation of a corporate charter are established.

■ Thus, there is no question that the Attorney General may file an action in the Circuit Court for the county in which the registered office for the corporation is situated for an involuntary dissolution of the corporation based upon § 607.271 (Fla. Stat.). Moreover, by virtue of Chapter 617.05(2), a non-profit corporation may be dissolved if the corporation becomes "defunct."

Ironically, in this particular instance it is the contention of the Debtor that the Attorney General has no standing to appear in this Court because he is not a creditor and he has standing only in the Circuit Court; he has right to proceed in the Circuit Court on one hand, but on the other hand, he cannot proceed because the automatic stay prohibits the Attorney General to proceed in the very court which is vested with the exclusive jurisdiction to consider a dissolution of a non-profit corporation under any of the provisions of the corporate laws of this State, Chapter 607.271 and 617.05(2).

The logic of the argument advanced by counsel for the Debtor borders on the specious and presents a classic catch-22 situation because, if accepted, it produces a totally absurd and unacceptable result supported by neither law nor logic. On the one hand, it would prevent the State to be heard in this court because if it is to be heard, it must be heard only in the state court. On the other hand, when the State attempts to be heard in the state court, it is prevented to do so because of the automatic stay. Thus, it must be considered whether or not, by virtue of the exclusion from the reach of the automatic stay of § 362(b)(4), the automatic stay is inapplicable to the proceedings now pending in the Circuit Court. Under this exclusion, the automatic stay shall not affect either the commencement or the continuation of any action or proceeding by governmental unit instituted to enforce the governmental unit's police or regulatory power.

Concededly while the term "police power" is generally understood and universally recognized the term is not capable of precise definition. Although there have been many attempts to define the term, it has never received a full and complete definition and the difficulty has been the subject of frequent judicial comments. In fact, it has been said that the police power is from its very nature incapable to any satisfactory or exact definition or limitations. *16 Am.Jur.2d § 362; Thomas Cusack Co. v. Chicago*, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1917); *Western Union Tel. Co. v. James*, 162 U.S. 650, 16 S.Ct. 934, 40 L.Ed. 1105 (1896); *McInerney v. Ervin*, 46 So.2d 458 (Fla.1950); *Pearsall v. Great N.R. Co.*, 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838 (1896). The definition of the police power is essentially the product of legislatures determination "addressed to the purposes of government, purposes neither abstractly nor historically capable of complete definition," *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

■ Be that as it may, this Court is satisfied that the suit instituted by the Attorney General against the Debtor is not an enforcement of police power of the State, however, this Court is equally satisfied that the suit pending in the Circuit Court is at least an enforcement proceeding of a regulatory power of the State of Florida, thus, clearly outside of the protection afforded by the automatic stay imposed by § 362 of the Bankruptcy Code.

It cannot be gainsaid that corporations are creatures of the state legislature and owe their existence to a grant of the charter by the State. To enforce and control their functions and operations falls, without doubt, within the regulatory power of the State. For instance, the State of Florida by passing the Charitable Fund Act; Chapter 496 Fla.Stat. expressly authorized the Department of State to supervise and control the functions of charitable corporations. While this Act is not directly applicable to non-profit corporations who do not solicit funds, there is no doubt that it was intended that the State of Florida will supervise and regulate the operation of non-profit corporations.

This being the case, it is clear that the proceeding pending in the Circuit Court

instituted by the State of Florida against the Debtor is not stayed and the State of Florida is permitted to apply for the entry of written findings and conclusions and final judgment based on the same without violating the automatic stay, provided, however, that the State of Florida may not apply for the appointment of a receiver without leave of this Court. This does not mean, however, that in the event the subject property is restored to the Debtor, the same would not be subject to the exclusive jurisdiction of this Court and the property would be clearly within the protection of the automatic stay by virtue of § 362(a)(2), (3), (4), (5).

For this reason, this Court expressly reserves jurisdiction to consider the Motions to Dismiss filed by the State of Florida; the Motions to Appoint Trustee; and the Motion to Dismiss filed by Barnett Bank not only on the grounds urged by the Motions, but also the question of the good faith of this Debtor to seek relief under Chapter 11. While this ruling is technically applicable only to the suit filed by the State of Florida, because the suit filed by Thomas and Welch were consolidated for trial in the Circuit Court, the stay should be lifted for "cause" under § 362(a)(1) as to the suit filed by Thomas and Welch in order to permit the Circuit Court to dispose of that suit also.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DE-CREED that the State of Florida may, without violating the automatic stay, proceed in the State Court to the limited extent to obtain a final decree against Jesus Loves You, Inc., the Debtor, and Gene Jandreau and Judith Jandreau, the additional Defendants, provided, however, that the State of Florida shall not apply for the appointment of a receiver or to obtain a money judgment against the Defendants or to obtain imposition of a lien or a trust on any of the properties of the Debtors without further order of this Court.

DONE AND ORDERED at Tampa, Florida on April 20, 1984.